No. 37,033

Jesse Tines, *Petitioner*, v. R. H. Hudspeth, Warden of Kansas State Penitentiary, *Respondent*.

(190 P. 2d 867)

Opinion filed March 6, 1948.

*Glenn D. Cogswell,* of Topeka, argued the cause for the petitioner.

*Harold R. Fatzer,* assistant attorney general, argued the cause, and *Edward F. Arn,* attorney general, was with him on the briefs for the respondent.

The opinion of the court was delivered by

Parker, J.: Petitioner initiated this, an original proceeding, by the filing of an application for a writ of habeas corpus. Subsequently, he requested that he be afforded counsel to assist him in the presentation of his cause. Pursuant to such request Glenn D. Cogswell, a capable and reputable member of the bar of this state, was appointed as petitioner's attorney. Since the date of his appointment Mr. Cogswell has faithfully and diligently represented his client. His services in that capacity include personal consultations, the preparation and filing of an amended petition, submission of an extensive brief, and personal presentation of the cause when submitted on its merits.

The application for a writ, as amended, alleges petitioner is unlawfully deprived of his liberty by the respondent and is now illegally confined in the Kansas state penitentiary for the following reasons: (1) He was twice put in jeopardy in violation of section 10 of the bill of rights of the constitution of the state of Kansas and the fifth amendment to the constitution of the United States. (2) He was deprived of his constitutional right to have the assistance of competent counsel at all necessary stages of the trials resulting in the conviction and sentence for which he is now incarcerated in violation of the sixth and fourteenth amendments to the constitution of the United States. (3) He was illegally extradited and

brought back to the penitentiary for the purpose of completing service of the sentence for which he is now confined in that at the time of such extradition he was not a "fugitive from justice" or "charged with a crime" so as to be subject to extradition proceedings under section 2, article 4 of the constitution of the United States and the laws enacted thereunder. (4) He was deprived of his liberty without due process of law in violation of the fifth and fourteenth amendments to the constitution in that in a habeas corpus action instituted by him in the district courts of Lancaster county, Nebraska, to test the legality of his arrest in that state as a result of extradition proceedings initiated in Kansas he was (a) denied the right of counsel to represent him, and (b) the right of appeal from the judgment of such court refusing to grant him a writ of habeas corpus.

A chronological account of the events responsible for petitioner's present incarceration is necessary in order to insure a full and complete understanding of the issues involved.

In September of 1930 an information was filed in the district court of Sedgwick county charging, in two counts, that on the 26th day of April, 1930, the petitioner forged and falsely uttered a certain bank check drawn on the Union National Bank of Wichita. Thereafter the case came on for trial and a jury was impaneled and sworn to try the cause. After the state had completed its case and rested the trial court, apparently on its own motion, but without objection from either party, dismissed the action. Subsequently, another information containing two counts was filed in the same court charging petitioner with the forgery and false uttering of the same instrument. The only material change in the language employed to describe the crime charged is found in the first count of the second information wherein it is alleged "Tines did then and there affix fictitious names, to wit. F. J. Manett and K. & M. Desicating Company." The first information contained no such allegation. In fact it simply charged the name signed to the check by Tines was F. J. Manett, whereas the names actually appearing on that instrument were F. J. Manett and K. & M. Desicating Company as charged in the second information.

In due time the case came on for trial on the new information. Petitioner waived formal arraignment and entered a plea of not guilty. At the conclusion of the trial a jury returned a verdict of guilty as charged in the first count of the information. Apparently,

although the record is silent on the subject, petitioner was acquitted on the second count. Thereafter, on March 28, 1931, by reason of the fact petitioner had thrice before been convicted of a felony, the trial court imposed a mandatory sentence, not here in question, of life imprisonment. No appeal was ever taken from the judgment of the sentencing court and, except for an interim of time presently to be mentioned, petitioner has been and now is confined in the state penitentiary under and by virtue of its terms and conditions.

After serving several years of the sentence heretofore mentioned petitioner instituted Case No. 680—H. C., in the district court of the United States for the district of Kansas, first division, wherein he asked for a writ of habeas corpus directing his release from the Kansas state penitentiary. On July 28, 1941, the Honorable Richard J. Hopkins, the then judge of that court, granted the writ and directed the petitioner's immediate release. The respondent in such action, the then warden of the state penitentiary, complied with the mandate of such court but perfected an appeal from its judgment to the United States Circuit Court of Appeals, 10th Circuit. That tribunal, after a full and complete hearing, on November 2, 1942, in a decision reported in 131 Fed. 2d 827, as *Amrine, Warden of the Kansas State Penitentiary v. Tines,* reversed the judgment of the district court, holding that the writ had been erroneously granted and directing the dismissal of the action.

It appears from the record that from June 3, 1942, until the commencement of extradition proceedings, presently to be mentioned, petitioner was confined in the Nebraska state penitentiary under a judgment of conviction and sentence for forgery.

On January 17, 1946, respondent made application to the governor of Kansas to issue a requisition to the governor of Nebraska for the apprehension and detention of petitioner, based upon the judgment and sentence of the district court of Sedgwick county to which reference has been heretofore made. Such application was granted and the requisition issued. Thereafter on January 19, 1946, the governor of Nebraska issued his warrant to the sheriff of Lancaster county, Nebraska, authorizing that official to arrest petitioner and deliver him to the agent designated by the governor of Kansas.

January 23, 1946, petitioner filed an application for a writ of habeas corpus in the district court of Lancaster county, Nebraska, in which he asked that he be released from the custody of the sheriff of such county who was then holding him under authority of the war-

rant issued by the governor of Nebraska. After a hearing the Nebraska district court denied the writ and no appeal was perfected from its judgment and decision. Petitioner was then delivered by the Nebraska sheriff to the duly designated Kansas agent who returned him to the Kansas state penitentiary and placed him in the custody of the respondent who now holds him under and by virtue of the judgment and sentence imposed by the district court of Sedgwick county.

Grounds 1 and 2 of the application for a writ, except for the single allegation charging a violation of our own constitution, are identical in form and substance with those presented and determined in *Amrine v. Tines*, 131 Fed. 2d 827. The court's opinion in that case contains a full, complete and well-considered statement of the facts there involved which, it can be stated, are the same as those reflected by the record here. Therefore, in lieu of a more detailed statement of the facts on which petitioner's contentions with respect to the validity of the sentence imposed against him by the district court of Sedgwick county depend, we refer to the factual statement appearing in such opinion and by reference make it a part of this opinion as fully and completely as if all facts therein set forth were incorporated herein.

Petitioner's contention his restraint is illegal because he was twice placed in jeopardy in violation of section 10 of the bill of rights of the constitution of the state of Kansas is not tenable. Conceding, as he contends, the general rule to be that one accused of crime is in jeopardy within the meaning of that term as used in such section when he is placed on trial in a court of competent jurisdiction by a duly impaneled jury upon a legally sufficient information, does not result in making his position sound.

Heretofore, we have pointed out that the first information charged petitioner with forgery of the check in question by the signing of the name "F. J. Manett." Perhaps it should be stated the purport of that instrument was thus alleged in the information while its tenor, also set forth therein, revealed two signatures. At any rate, it appeared from the evidence adduced by the state in the first action that two names "F. J. Manett and K & M Desicating Company" were affixed to the original check. In that situation there was a fatal variance between the allegations of the information and the proof.

See *State v. Woodrow*, 56 Kan. 217, 42 Pac. 714, and authorities there cited.

To the same effect is *Bethany v. State* (Tex. Crim. App.), 179 S. W. 1166, where in dealing with a situation identical in character it was held that when the purport clause in an indictment alleges the instrument forged to have been the act of one or more named persons, while the instrument set out by its tenor is the act of more or less persons than alleged, the variance is fatal, especially in the absence of any innuendo or explanatory averments as to the nature of the instrument and its character.

For a general discussion on the same subject see 37 C. J. S. 73, § 55.

Having determined there was a variance between the information and the proof, in the case on which petitioner now relies as placing him in jeopardy, the trial court was justified in dismissing the action without prejudice. But having done so there was nothing to preclude petitioner's subsequent arrest, prosecution and conviction, on an information containing a charge more accurately formulated to conform with the evidence. Our criminal code contains pertinent provisions covering just such a situation. They read:

"When it appears at any time before verdict or judgment that a mistake has been made in charging the proper offense, the defendant shall not be discharged if there appears good cause to detain him in custody; but the court must recognize or commit him to answer to the offense, and if necessary recognize the witnesses to appear and testify." (G. S. 1935, 62-1441.)

"When a jury has been impaneled in either case contemplated in the last two preceding sections, such jury may be discharged without prejudice to the prosecution." (G. S. 1935, 62-1443.)

Indeed, without the foregoing statutory provisions such action would have been proper. The legal effect of the dismissal of the cause was to take the case from the jury and acquit the defendant of the charge on the ground of variance between the information and the proof. G. S. 1935, 21-115, reads:

"When a defendant shall have been acquitted of a criminal charge, upon trial, on the ground of variance between the indictment and the proof, or upon any exceptions to the form or substance of the indictment, or where he shall be convicted but the judgment shall for any cause be arrested he may be tried and convicted on a subsequent indictment for the same offense, or any degree thereof."

Having determined petitioner was not placed in jeopardy by the first action it becomes unnecessary to dispose of respondent's contention petitioner waived any defense of former jeopardy by waiving arraignment and entering a plea in the second action before

raising such defense or his additional claim that questions pertaining to former jeopardy are not reviewable in this jurisdiction in habeas corpus proceedings but must be presented by appeal from the judgment and sentence of the court in which conviction occurs.

As has been heretofore stated the claims made by petitioner, in grounds 1 and 2 of his application, with regard to his present restraint being in violation of the fifth, sixth and fourteenth amendments to the constitution of the United States have been fully presented and definitely determined by the Circuit Court of Appeals, 10th Circuit, in *Amrine v. Tines,* supra. What is more the record further reveals that identical claims were rejected as grounds for the issuance of a writ of habeas corpus by the Honorable Arthur J. Mellott, judge of the district court of the United States for the district of Kansas, by a judgment rendered in that court on the 17th day of August, 1946, in Case No. 961-H.C.

Respondent contends petitioner's claim on the points now being considered is *res judicata* by virtue of the two decisions to which we have just referred. This court's position with respect to such contention is fully stated in the opinion of *Crebs v. Hudspeth,* 160 Kan. 650, 656, 164 P. 2d 338, where it was said:

"At this point we pause to consider respondent's contention that all questions determined in the two decisions from which we have just quoted are *res judicata* and no longer available as grounds for habeas corpus in the case at bar. We do not believe the rule permits the sustaining of that contention in the broad form in which respondent seeks its application. As we understand it the doctrine of *res judicata* does not apply in case of refusal to discharge a prisoner on habeas corpus. However, prior adjudications, where a subsequent application is based on the same facts relied on in former proceedings, may be taken into consideration to prevent abuse of the writ and given controlling effect if in the exercise of its discretion such conclusion appears to the court, to which the subsequent application is presented, to be justified after consideration of all facts and circumstances having a material bearing upon the subject. (39 C. J. S. 698, § 25; Am. Jur. 250 § 156; *Wong Doo v. United States,* 265 U. S. 239, 68 L. Ed. 999; *Salinger v. Loisel,* 265 U. S. 224, 68 L. Ed. 989; *Slaughter v. Wright,* 135 F. 2d 613). So, in the instant case, we might in the exercise of judicial discretion decide that since the record presents no new facts and circumstances former decisions control and refuse to again pass upon contentions so often determined. And we might add, that in the event such action was required we would not hesitate to take it." (p. 656).

Our examination of the two federal decisions mentioned convinces us the conclusion reached in each was absolutely sound. They hold petitioner had not been placed in jeopardy or deprived

of counsel or a fair and impartial trial in violation of any of the constitutional amendments on which he relied and was not entitled to a writ directing his release from custody. We have examined the present record. It presents no facts or circumstances other than those reflected in such decisions and no legal reason, save the *res judicata* rule in habeas corpus proceedings, is advanced as to why they should not be followed. In such a situation we feel the action of petitioner in asking this court to determine questions involving the construction of provisions of the federal constitution and its amendments, when those same questions have twice been decided by the federal courts in fair and impartial hearings, constitutes an abuse of the privilege of the writ of habeas corpus. Therefore, in the exercise of our judicial discretion, we give the decisions of the federal courts controlling effect and refuse in this action to again pass upon the question whether petitioner is being restrained of his liberty in violation of the fifth, sixth and fourteenth amendments to the constitution of the United States as charged in the first and second grounds of his application.

The third claim made by petitioner and relied on by him as a ground for the issuance of a writ is likewise untenable. While it is true that under the provisions of article 4 of the constitution of the United States and laws enacted thereunder (18 U. S. C. A., §§ 662, 663) no person can be lawfully removed from one state to another by extradition unless he is charged with crime and is a fugitive from justice, petitioner's contention that he was neither charged with crime nor a fugitive when extradited from Nebraska cannot be upheld. We are not disposed to labor the issue. Petitioner's sentence under the judgment rendered by the district court had not expired on the date of his extradition. Under numerous decisions, within the meaning of such terms as used in the constitution and the criminal code, a person is "charged with crime" where prosecution has been initiated, pursued to judgment of conviction and sentence has not expired (18 U. S. C. A., § 662, note 22; U. S. C. A. [Const.], art. 4, § 2, clause 2, note 9). He is also a "fugitive from justice." (18 U. S. C. A., § 662, note 8; U. S. C. A. [Const.], art. 4, § 2, clause 2, note 15.)

Petitioner's final and fourth claim as set forth in his application, merits little if any attention. It suffices to say he failed to establish that he was denied counsel or the right of appeal in the habeas corpus action instituted by him in the district court of Lancaster county, Nebraska.

The writ is denied.